UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WILLIE JUNIOR WILLIAMS,

                    Plaintiff,

    – against –

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

**OPINION AND ORDER**
15 Civ. 7526 (ER) (SN)

RAMOS, D.J.:

      Before the Court is the Report and Recommendation ("R&R") dated July 26, 2016 of

Magistrate Judge Sarah Netburn, to whom this matter was referred for judicial review of a final

decision of the Commissioner of Social Security ("Commissioner"), denying Plaintiff Willie

Junior Williams' ("Plaintiff") application for Supplemental Security Income ("SSI") disability

payments.  In the R&R, Judge Netburn recommends granting the Commissioner's motion for

judgment on the pleadings.  For the reasons stated herein, the Court ADOPTS the R&R and

directs the entry of judgment as recommended.

   **I.**    **Background**

   **A. Factual and Procedural Background**

      On January 27, 2012, Plaintiff applied for SSI, claiming that he suffered from chronic

back pain and depression, preventing him from working in any capacity.  R&R, Doc. 17 at 2.

The Social Security Administration ("SSA") denied Plaintiff's application on June 6, 2012.  *Id.*

After requesting a hearing, Plaintiff appeared before Administrative Law Judge ("ALJ") Seth

Grossman on October 25, 2013.  *Id.*  ALJ Grossman issued his decision on July 24, 2014 ("July

24 Decision"). Doc. 10, Ex. 2. [1] He found that Plaintiff had degenerative disc disease of the lumbar spine with L4-L5 disc herniation, hepatitis C, and asthma, and characterized them as "severe" impairments within the meaning of the Social Security regulations. *Id.* at 4. He also found that Plaintiff's depression was "nonsevere," because it did not "cause more than minimal limitation" to Plaintiff's ability to perform basic mental work activities. *Id.* The ALJ concluded that although Plaintiff's impairments could conceivably cause his alleged symptoms, Plaintiff's testimony concerning his limitations was out of proportion with the medical evidence. *Id.* at 6. To support this conclusion, the ALJ relied on clinical evidence that showed only mild restrictions to his range of motion and isolated reports of positive straight leg raise tests. He also noted that though surgery had been suggested, Plaintiff chose more conservative treatment, which he found to be inconsistent with Plaintiff's characterization of his debilitating limitations. *Id.* at 7. The ALJ added that Plaintiff's drug addiction may have provided a secondary motivation for emphasizing the severity of his back pain. *Id.*

Lastly, the ALJ explained that he assigned very little weight to the opinion evidence provided by Plaintiff's treating physician, Dr. Marshall Kurtz, and the medical consultant requested by the SSA to examine Plaintiff, Dr. Marlene Mescon. He found that Dr. Kurtz's assessment that Plaintiff's back pain limited his mobility and activities of daily living, including his ability to sit, stand, walk, crouch, and squat, was unsupported by the medical records. *Id.* at 7-8. In his treatment notes, Dr. Kurtz only mentions mild impairments in Plaintiff's mobility and spine. R&R, at 14. Dr. Kurtz's notes also do not mention any impairments in Plaintiff's thoracic spine or neck, yet Dr. Kurtz wrote in his disability opinion that Plaintiff "was only occasionally capable of looking down, turning his head right or left, looking up, and holding his head in a

---

[1]When referencing the page numbers of this document, the Court will cite to the document's actual pagination.

static position." *Id.* Unlike with Dr. Kurtz, the ALJ found that Dr. Mescon's findings were well supported by the examination findings. Dr. Mescon found that Plaintiff had no limitations with respect to his ability to sit, stand, climb, push, pull, or carry heavy objects. Nonetheless, the ALJ reasoned that Dr. Mescon's opinion was based on a single examination of Plaintiff and did not take into account the evidence in the record, and thus afforded it less weight. July 24 Decision at 8. The ALJ gave the greatest weight to Dr. Malcolm Brahms, who was asked by the ALJ to opine at the hearing in order to resolve the "deep discrepancy between" the opinions of Drs. Kurtz and Mescon. *Id.* at 8. Dr. Brahms found that Plaintiff was capable of lifting or carrying up to twenty pounds, could stand for up to four hours, and walk up to one hour, in an eight-hour workday. The ALJ found Dr. Brahms' testimony to be "well supported by the objective and clinical findings, consistent with all evidence in the treatment and examination records, and ultimately better supported by the medical record as a whole" than either Dr. Kurtz's or Dr. Mescon's opinions. *Id.* The ALJ also held that based on Plaintiff's "residual functional capacity for the full range of sedentary work," in conjunction with among other things, the Medical-Vocational Guidelines, there are jobs in the national economy that Plaintiff can perform. *Id.* at 10. Accordingly, the ALJ denied Plaintiff's application, finding him not disabled from January 27, 2012, through the date of the decision.

Plaintiff appealed ALJ Grossman's decision, and on July 21, 2015, the SSA's Appeal Council denied his request for review.

Plaintiff, through counsel, filed the instant action on September 23, 2015. Doc. 1. On March 9, 2016, the Commissioner moved for judgment on the pleadings. Doc. 11. Plaintiff cross-moved for judgment on the pleadings on April 6, 2016. Doc. 13.

### B. Plaintiff's Opposition to the Commissioner's Motion

In his opposition papers, Plaintiff made three arguments, maintaining that the ALJ: (1) failed to give controlling weight to Plaintiff's treating physician, Dr. Kurtz; (2) improperly relied on Dr. Brahms' expert testimony; and (3) improperly failed to obtain an opinion from a vocational expert. R&R, at 10-11, *see also* Doc. 14.

Specifically, Plaintiff claimed that, Dr. Kurtz's opinion should have been given controlling weight because Plaintiff visited him on a monthly basis between 2012 and 2014, Dr. Kurtz had conducted numerous physical examinations of Plaintiff, and had developed Plaintiff's treatment plans. Doc. 14 at 19. Plaintiff further claims that Dr. Kurtz's opinion was consistent with the record as a whole and that as Chief of the Division of Physical Therapy at Bronx-Lebanon Hospital, *i.e.* a specialist, Dr. Kurtz's opinion was entitled to the greatest weight. *Id.*

Plaintiff also took issue with the ALJ's decision to rely heavily on Dr. Brahms' assessment, because Dr. Brahms had not had an opportunity to review Dr. Kurtz's residual functional assessment or to review records received after the hearing. *Id.* at 22. Plaintiff claims that the records included notes showing that he had received at least one epidural injection and visited the treating doctor on eleven occasions. *Id.* at 23. He asserted that the ALJ should have allowed Dr. Brahms to consider the records and indicate whether or not it affected his opinion. *Id.* In a footnote, Plaintiff further noted that Dr. Brahms had failed to disclose that his license was limited to providing testimony in SSA hearings, and that he had not been allowed to practice medicine since 2007. *Id.* at 22 n.21.

Lastly, Plaintiff argues that the ALJ erred in finding that Plaintiff could perform the full range of sedentary work because he ignored Plaintiff's "non-exertional impairments." *Id.* at 24. He asserts that although the ALJ found that his asthma and Hepatitis C were severe impairments,

the ALJ did not consider whether these impairments limited his functioning.  *Id.* at 25.  Plaintiff

further claims that the ALJ did not adequately consider the "postural limitations" indicated by

Dr. Kurtz, mainly his difficulty to look down, to turn his head right or left, hold his head in a

static position, and also his inability to twist, bend, crouch, squat, climb ladders, or stairs.  *Id.* at

25-26.

## II.    Standard of Review

A district court reviewing a magistrate judge's report and recommendation "may accept,

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate

judge."  28 U.S.C. § 636(b)(1)(C) (2012).  Parties may raise "specific," "written" objections to

the report and recommendation "[w]ithin fourteen days after being served with a copy."  *Id.*; *see*

*also* Fed. R. Civ. P. 72(b)(2).  A district court reviews *de novo* those portions of the report and

recommendation to which timely and specific objections are made.  28 U.S.C. § 636(b)(1)(C);

*see also United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38 (2d Cir. 1997).  The

district court may adopt those parts of the report and recommendation to which no party has

timely objected, provided no clear error is apparent from the face of the record.  *Lewis v. Zon*,

573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008) (quoting *Arthur v. Goord*, No. 06 Civ. 326 (DLC),

2008 WL 482866, at *3 (S.D.N.Y. Feb. 21, 2008)).  The district court will also review the report

and recommendation for clear error where a party's objections are "merely perfunctory

responses" argued in an attempt to "engage the district court in a rehashing of the same

arguments set forth in the original petition."  *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451

(S.D.N.Y. 2008) (citations and internal quotation marks omitted).

## III.    Discussion

On August 11, 2015, Plaintiff timely filed his objections.  Doc. 20.  However, Plaintiff does not meaningfully contest Judge Netburn's findings and merely rehashes the three claims that he previously asserted.  Therefore, the Court determines that Plaintiff's objections are "merely perfunctory responses" argued in an attempt to "engage the district court in a rehashing of the same arguments set forth in the original petition," and accordingly reviews the R&R only for clear error.  *Ortiz*, 558 F. Supp. 2d at 451.

### A.  Plaintiff's Objections

Plaintiff's objections merely reiterate the arguments made to Judge Netburn.  *See* Doc. 20.  Once more, Plaintiff challenges the ALJ's decision to afford less weight to Dr. Kurtz's opinion, claiming that the inconsistencies between Dr. Kurtz's opinion and his medical notes highlighted by Judge Netburn – and by the ALJ – were insufficient to show that Dr. Kurtz's opinion was not supported by the record, and thus unworthy of deference.  *Id.* at 3.  Plaintiff also argues that Dr. Brahms' opinion was not based upon a review of the entire record and that the ALJ erred by not giving Dr. Brahms the opportunity to review the additional records.  *Id.* at 3-4.  He further asserts that Judge Netburn did not fully appreciate the information in the new records – the eleven doctor's visits and the epidural injection – and how those factors could have influenced Dr. Brahms' assessment.  *Id.* at 5.  Again, though in more detail this time, Plaintiff asserts that Dr. Brahms misled the ALJ about his qualifications and suggests that the ALJ would not have relied heavily on Dr. Brahms' assessment had he known that Dr. Brahms had not practiced medicine or seen patients since 2007.  *Id.* at 6-7.  Lastly, Plaintiff claims that both the ALJ and Judge Netburn erred by not considering his non-exertional limitations in determining his residual functioning capacity.  *Id.* at 8-9.

**B. The R&R**

In the R&R, Judge Netburn individually addressed each of Plaintiff's arguments, ultimately concluding that the ALJ's determination was supported by substantial evidence and does not contain legal error. R&R, at 1.

First, Judge Netburn concluded that the ALJ provided adequate reasons for discounting the opinion of Dr. Kurtz, Plaintiff's treating physician. *Id.* at 14. In the July 24 Decision, the ALJ explained that he rejected Dr. Kurtz's assessment because it was inconsistent with his own treatment notes. *Id.* at 13. For example, Dr. Kurtz concluded that Plaintiff was only occasionally capable of looking down or turning his head left or right, however, his notes made no mention of any impairments in his thoracic spine or his neck. *Id.* at 14. Additionally, Dr. Kurtz claimed that Plaintiff could never twist, bend, crouch, squat, or climb ladders or stairs, but his own findings showed only limited impairments in Plaintiff's range of motion. *Id.* Dr. Kurtz's opinion was further rebutted by Dr. Mescon's finding that Plaintiff possessed no limitations, and Dr. Brahms' finding that his impairments were restrictive but not severe. Judge Netburn noted that this was not "a case where the ALJ misunderstood the physician's opinions or substituted the assessment of lay witnesses for competent medical testimony" and concluded that the ALJ's "failure to follow fastidiously the Social Security regulations may have yielded an imperfect decision," but that "any error was harmless." *Id.*

Judge Netburn also found that the ALJ had properly relied on Dr. Brahms' testimony, despite Dr. Brahms not having had an opportunity to review Dr. Kurtz's disability assessment or later-developed evidence. *Id.* at 15-16. In his motion, Plaintiff did not cite to any controlling authority for the proposition that an ALJ is *required* to ask a medical examiner – that has already testified – to review new evidence and determine whether the new evidence affects his or her

testimony. In fact, and as Judge Netburn notes, "[w]hen an ALJ receives new evidence after an ME has provided testimony or responded to interrogatories, the ALJ *may* ask the ME to review the new evidence to determine if it affects the ME's testimony or response." *Id.* at 15 (citing HALLEX I-2-5-45 (emphasis added)).

Here, though Dr. Brahms did not have Dr. Kurtz's disability report when he prepared his own assessment, he was read the report by the ALJ and considered it before testifying. *Id.* at 9, 15. Dr. Brahms testified that Dr. Kurtz's report did not change his assessment of Plaintiff's capabilities. *Id.* at 16. Judge Netburn also concluded that the later-developed evidence was consistent with Dr. Kurtz's earlier treatment notes and thus, the ALJ was under no obligation to ask Dr. Brahms to consider the evidence. *Id.* Judge Netburn held that the ALJ had not committed legal error because Dr. Brahms' opinion was consistent with the record and the ALJ actually gave Plaintiff the benefit of the doubt and concluded that his functional capacity was in fact lower than Dr. Brahms had assessed. *Id.*

Judge Netburn also concluded that Plaintiff had not established that a reasonable factfinder would be required to reject Dr. Brahms' testimony due to the alleged misrepresentation regarding his qualifications. *Id.* She therefore denied Plaintiff's request to set aside the ALJ's finding of Dr. Brahms' credibility. *Id.* For this determination, Judge Netburn relied on *Brault v. Social Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012). In *Brault*, the Second Circuit stated that when reviewing the Commissioner's denial of Social Security benefits, "[the Court] conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Id.* at 447 (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). The Court in *Brault* further held that the "substantial

8

evidence standard means once an ALJ finds facts, [the reviewing court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'"  *Brault*, 683 F.3d at 448 (citing *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (quotation marks omitted and emphasis added).  Additionally, "[t]o be supported by substantial evidence, the ALJ's decision must be based on consideration of 'all evidence available in [the claimant]'s case record.'" *Rodriguez v. Colvin*, No. 15 Civ. 2570 (RLE), 2017 WL 1194705, at *10 (S.D.N.Y. 2017) (quoting 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(H)(i) (2012)).  Therefore, in order to reverse the ALJ's finding that Dr. Brahms' testimony was credible, this Court must determine whether a reasonable factfinder would have to reject Dr. Brahms' testimony due to insufficient evidence in the record to support his testimony.

The ALJ concluded that Dr. Brahms' testimony was credible not only because of his medical knowledge and past experience, but also because it "was well supported by the objective clinical and laboratory findings, consistent with all evidence in the treatment and examination records, and ultimately better supported by the medical record as a whole than either the consultative examining physician or treating physician's opinions."  July 24 Decision at 7. Furthermore, at the time of the hearing, Dr. Brahms had a medical license and was permitted to give testimony at Social Security hearings.  The fact that the State Medical Board of Ohio disallowed Dr. Brahms from practicing medicine with patients, does not necessarily mean that he is ill-equipped to review medical records and provide testimony regarding a disability diagnosis within the meaning of the Social Security Act.  Therefore, Judge Netburn determined that the ALJ properly accepted and relied on Dr. Brahms' testimony.

Finally, Judge Netburn held that the ALJ properly relied on the Medical-Vocational Guidelines ("the grids") to determine whether Plaintiff is capable of performing work that exists

in the national economy.  R&R, at 17.  She noted that "sole reliance on the grids may be precluded where the claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform." *Id.* (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)).  However, she found that the record did not provide any non-exertional limitations that the ALJ should have taken into account.  *Id.*  Specifically, in the SSI application, Plaintiff did not assert that his asthma or hepatitis C presented any impairment to his daily functioning.  *Id.*  The ALJ also found that Plaintiff's postural limitations were not supported by the record evidence as a whole.  *Id.* Consequently, Judge Netburn concluded that without any severe non-exertional limitations, the ALJ properly relied on the grids for its determination.  *Id.*

Judge Netburn reached her determination after a careful review of the parties' submissions and the applicable law.  Specifically, Judge Netburn's determinations that the ALJ properly discounted the opinion of Plaintiff's treating physician, Dr. Kurtz, appropriately relied on Dr. Brahms' testimony, and correctly relied on the Medical Vocational-Guidelines to determine Plaintiff's ability to work in the national economy are all well-reasoned.  Plaintiff's objections do not meaningfully contest these findings.  This Court finds that the R&R was not clearly erroneous in concluding that the ALJ's decision was free of legal error and supported by substantial evidence.  Thus, it adopts the R&R's recommendations, in their entirety.

## IV.    Conclusion

Having reviewed Judge Netburn's thorough R&R, the Court finds no error, clear or otherwise.  The Court therefore ADOPTS Judge Netburn's recommended judgment for the reasons stated in the R&R.  Accordingly, the Commissioner's motion for judgment on the pleadings is GRANTED.

The Clerk of the Court is respectfully directed to enter judgment, terminate the motions, Docs. 11 and 13, and to close this case.

It is SO ORDERED.

Dated: April 25 , 2017
New York, New York

Edgardo Ramos, U.S.D.J.